UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAUTISTA FERNANDEZ,<br>Plaintiff,<br>v.<br>NANCY A. BERRYHILL,<br>Defendant. | Case No. 17-cv-03552-NC<br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 20, 22 |

Plaintiff Bautista Fernandez seeks judicial review of the commissioner of Social Security Nancy Berryhill's denial of his application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Fernandez alleges that the Administrative Law Judge (ALJ) erroneously found him not disabled. Specifically, Fernandez argues the ALJ (1) failed to properly weigh the medical evidence in assessing Fernandez's residual functional capacity (RFC); and (2) improperly found he could perform past relevant work based on that RFC.

The Court finds the ALJ lacked substantial evidence and committed legal error in determining Fernandez's RFC and finding Fernandez not disabled based on his ability to perform past relevant work. Therefore, the Court GRANTS Fernandez's motion for summary judgment and DENIES Commissioner Berryhill's cross motion for summary judgment. The Court REVERSES the ruling of the ALJ and REMANDS with instructions to calculate benefits.

## I. BACKGROUND

### A. Procedural History

Prior to this action, Bautista Fernandez filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act on December 17, 2013 alleging disability commencing December 7, 2012. AR 178–82. The commissioner initially denied the claim. AR 93–96. Fernandez requested reconsideration and was denied on August 6, 2014. AR 99–105. Fernandez requested a de novo hearing before an ALJ. AR 106–07. ALJ Betty Roberts Barbeito presided over the hearing on November 4, 2015. AR 39–66. The ALJ found Fernandez not disabled on January 8, 2016. AR 18–34.

Fernandez requested that the Appeals Council review the ALJ decision. AR 170–71. The Appeals Council denied the request on May 10, 2017. AR 1–9. On that date, the ALJ decision became the final decision of the Commissioner. 42 U.S.C. § 405(h). Fernandez timely requested review by the Court, under 42 U.S.C. § 405(g), by filing his complaint on June 20, 2017. Dkt. No. 1. Fernandez then moved for summary judgment and Commissioner Berryhill filed an opposition and cross motion for summary judgment. Dkt. Nos. 20, 22. Both parties consented to the jurisdiction of a magistrate judge, pursuant to 28 U.S.C. § 636(c). Dkt. Nos. 8, 10.

### B. Factual History

Fernandez is a 62-year-old United States citizen, born in Mexico. AR 44–45. Fernandez worked as a strawberry picker for over 30 years. AR 53. In December 2012, Fernandez stopped working because of knee pain and has not returned to work since. AR 45–46. Fernandez sought treatment over the next several years. Dkt. No. 20 at 4–9. Significantly, Fernandez had surgery to repair his knee in April 2013. Dkt. No. 21 at 5. Despite the procedure, Fernandez alleges ongoing debilitating knee pain. Dkt. No. 21 at 5–9. Aside from his knee, Fernandez alleges several other impairments, including: finger and hand pain, vertigo, high cholesterol, and tendonitis. AR 26.

Case No. 17-cv-03552-NC    2

### 1. Medical Evidence

The medical record includes treatment notes and opinion evidence from: Dr. B. Carlson, Dr. C. Heywood, Dr. M. Romo-Gritzwesky (Dr. Romo,) Dr. J. Villaruz, Dr. L. Miller, and Dr. S. Suh. AR 240–77, 280–395. The record also contains opinion evidence from consultative examiner Dr. Daniel Katzenberg and non-examining state medical consultants, Dr. L. Kiger and Dr. B. Sheehy. AR 67–91, 278–79. Additionally, non-examining physician Dr. L.A. Fuchs testified at the ALJ hearing. AR 24.

In January 2013, Fernandez saw Dr. Carlson about pain and stiffness in his left knee. Dkt. No. 21 at 4. Dr. Carlson referred Fernandez to physical therapy and ordered an MRI. Dkt. No. 21 at 4. In March 2013, Dr. Carlson referred Fernandez to Dr. Heywood who recommended surgery. Dkt. No. 21 at 4–5. Dr. Heywood performed the surgery in April 2013 and shortly afterwards noted that Fernandez was doing well. Dkt. No. 21 at 5. In June 2013, Fernandez returned to Dr. Heywood, still complaining of knee pain and Dr. Heywood suggested that he continue physical therapy. Dkt. No. 21 at 6. Also in June 2013, Fernandez saw Dr. Romo complaining of back pain and Dr. Romo diagnosed Fernandez with lumbago. Dkt. No. 21 at 6. In March 2014, Fernandez saw Dr. Katzenberg complaining of knee pain as well as pain in random body parts at any given time; Dr. Katzenberg noted several pain trigger points but noted that Fernandez had no difficulty walking, hopping, or balancing on either foot. Dkt. No. 21 at 6. In April 2014, Fernandez saw Dr. Villaruz complaining of multiple joint pains; Dr. Villaruz found nothing abnormal but continued Fernandez's pain medication prescription. Dkt. No. 21 at 6–7. In May 2014, Fernandez saw Dr. Miller complaining of leg weakness; Dr. Miller found decreased motion in multiple joints and knee osteoarthritis. Dkt. No. 21 at 6–7. Finally, in July 2015, Fernandez saw Dr. Suh complaining of sharp pain in his leg when getting up from a sitting position; Dr. Suh found knee osteoarthritis "with varus deformities" and joint complications. Dkt. No. 21 at 9.

### 2. The ALJ Hearing

On January 13, 2018, the ALJ conducted a hearing to review Fernandez's application for a period of disability and disability insurance benefits. AR 34. Fernandez was present and represented by counsel at the hearing. AR 24. Fernandez, Dr. Fuchs, and vocational expert (VE) J. C. Westman each testified at the hearing. AR 24. Fernandez testified with the assistance of a Spanish interpreter. AR 24.

Fernandez testified that he could not work because of knee pain. AR 46. He said that his knees "hurt a lot" and that his knees gave out when he bent his legs. AR 54. He also said that he did not do any kneeling or crawling because it was difficult for him to stand up from the ground. AR 54. Fernandez claimed that he could not lift more than four pounds or drive more than three miles. AR 56, 58. He said his only hobbies were staying at home and watching TV. AR 59.

Fernandez also testified that he could not see a doctor "that much" because he could not afford to. AR 55. He said that his insurance company refused to pay beyond the first visit to Dr. Miller. AR 55. He said that he paid for one visit to Dr. Miller "out of [his] pocket" and then saw Dr. Suh once. AR 55. He claims he only saw Dr. Suh once because he didn't give him "any prescription" and only told him to work "straight" instead of "hunched over." AR 55. Fernandez testified that he only took Tylenol for pain, at the time of the hearing. AR 56. He also took cholesterol medication and aspirin, as a blood thinner. AR 56.

Dr. Fuchs testified as to Fernandez's residual functional capacity (RFC.) AR 49–52. The doctor noted no decreased ability to work and assigned him an RFC of medium.[1]

---

[1] Medium Work: "Claimant can lift 50 pounds occasionally and 25 pounds frequently, stand and/or walk with normal breaks for six hours in an eight-hour day, and sit with normal breaks for six hours in an eight-hour day; pushing and pulling is unlimited other than what is noted for lifted [sic] and carrying. The claimant can frequently climb ramps, stairs, ladders, ropes, or scaffolds as well as frequently balance, stoop, kneel, crouch, and crawl. The claimant has no manipulative, visual, communicative, or environmental limitations." AR 28.

Case No. 17-cv-03552-NC  4

AR 50. However, the doctor explained that crouching, kneeling, and stooping should each be limited to "occasional."[2] AR 51. Thereafter, the ALJ confirmed with Dr. Fuchs that Fernandez could climb ladders frequently, but had no further questions regarding the postural limitations. AR 52.

The VE testified as to Fernandez's ability to perform past relevant work, given his RFC. AR 60–65. The VE classified Fernandez's past work as that of "vegetable harvest worker" rather than "fruit harvest worker" because strawberries grow near the ground and thus, picking them was more in line with the Dictionary of Occupational Titles' (DOT) "vegetable harvest worker" description. AR 61. The ALJ posed a hypothetical to the VE, outlining a medium RFC without the postural limitations proposed by Dr. Fuchs. AR 62. The VE concluded that a person with the RFC as described would be able to perform work relevant to a strawberry picker as generally performed in the national economy. AR 62.

Next, Fernandez's attorney questioned the VE. AR 63–65. The attorney asked the VE if the past relevant work would be within the RFC of a person who could only stoop and kneel occasionally. AR 63. The VE concluded that a person with those restrictions could not perform Fernandez's past relevant work. AR 64. The attorney also questioned the VE on the hours a harvest worker was expected to work per day. AR 65. The VE said he did not know how many hours harvest workers were expected to work typically. AR 65. He concluded that the hours were "at least eight" and "likely up to 10." AR 65. Thereafter, the ALJ remarked that "even if [the number of hours] did get up to 10 . . . the DOT is based on an eight-hour workday." AR 65.

### 3. The ALJ Decision

To qualify for disability benefits under the Social Security Act, a claimant must first be determined eligible under the requirements of 20 C.F.R. § 416.202. If eligible, a claimant must be unable "to engage in any substantial gainful activity by reason of any

---

[2] "Occasionally" means occurring from very little up to one-third of the time. "Frequently" means occurring from one-third to two-thirds of the time. SSR No. 83-10.

Case No. 17-cv-03552-NC      5

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 48 U.S.C. § 1382c(a)(3)(A). An ALJ uses a five-step evaluation to determine if a claimant is disabled. 20 C.F.R. § 416.920(a)(1). If the ALJ cannot determine whether the claimant is disabled at any step, the ALJ proceeds to the next step. *Id.*

### i. Insured Status and Steps 1-3

As a preliminary matter, the ALJ determined Fernandez was eligible for disability benefits because he met the Social Security Act's insured status requirements. AR 26.

The ALJ could not determine whether or not Fernandez was disabled at step one, two, or three. AR 26–27. At step one, the ALJ determined that Fernandez had not been engaged in substantial gainful activity since December 7, 2012. AR 26. At step two, the ALJ determined that Fernandez had the following severe impairments: bilateral knee osteoarthritis with varus deformities; complex medial meniscal tear in the left knee; status post meniscectomy; multiple-joint pain; cervical spondylosis; and lumbar spondylosis with mildly irritated left sciatic nerve. AR 26. At step three, the ALJ determined that Fernandez did not have an impairment or combination of impairments "that [met] or medically equal[ed] the severity of one of the listed impairments." AR 27; *see* 20 C.F.R. § 404.1520(d). The ALJ then proceeded to determine the RFC and evaluate step four.

### ii. RFC Determination

Before proceeding to step four, an ALJ must determine the claimant's residual functional capacity (RFC.) 20 C.F.R. § 416.945(a)(4)(iv). To determine RFC, an ALJ considers all of the claimant's severe impairments collectively. *Id.* § 416.945(a)(2).

The ALJ determined RFC based on review of (1) Fernandez's symptom testimony; (2) treatment notes and medical opinions in the record; and (3) Dr. Fuchs's expert testimony. AR 28-33.

First, the ALJ rejected Fernandez's symptom testimony which indicated that he was in constant pain, unable to sit or kneel down, and could not lift more than four pounds.

Case No. 17-cv-03552-NC  6

The ALJ found the subjective testimony "not entirely credible" because it was inconsistent with the medical record as a whole.

Second, the ALJ gave little weight to treating physicians Dr. Heywood and Dr. Romo-Gritzewsky's opinions which indicated that Fernandez should not work from June 2013 through December 2013. AR 31. The ALJ reasoned that the opinions each went "to an issue reserved for the commissioner" and therefore could not be "given special significance." AR 31. She noted, however, that they must still be considered in evaluating the RFC. AR 31. Nonetheless, she assigned them little weight because neither set forth "abnormal examination findings" nor "specific work-related limitations." AR 31.

The ALJ also gave little weight to examining physician Dr. Katzenberg's opinion which indicated that Fernandez was "subjectively impaired by pain at all times." AR 32, 279. The ALJ reasoned that Dr. Katzenberg made no objective findings to justify the pain. AR 32. Therefore, she gave the opinion little weight because it was based mostly on Fernandez's subjective complaints of pain. AR 32.

The ALJ also gave little weight to examining physician Dr. Suh's opinion which indicated that Fernandez should "perform no reclining." AR 32. The ALJ reasoned that there was no examination finding to support the opinion. AR 32. Therefore, he gave the opinion little weight because it had no objective basis. AR 32.

The ALJ gave great weight to the non-examining state medical consultants' opinions which indicated that Fernandez could perform medium work but only frequently balance, stoop, kneel, crouch, and crawl. AR 32. The ALJ reasoned that the opinions were consistent with the medical evidence as presented to them. AR 32. Therefore, she gave the opinions great weight because they did not conflict with the objective medical evidence. AR 32.

Finally, the ALJ gave great weight, in part, to non-examining physician Dr. Fuchs's opinion which indicated that Fernandez could perform medium work but could "only occasionally" kneel, crouch, and stoop. AR 32. The ALJ reasoned that Dr. Fuchs had a

Case No. 17-cv-03552-NC 7

level of experience that gave him "great insight into the functional limitations imposed by claimant's knee problems." AR 32. Therefore, she gave great weight to Dr. Fuchs's determination of "medium work" because it was fully consistent with the objective medical evidence. AR 32. However, she gave Dr. Fuchs's opinion of only occasionally postural limitation little weight because "the record [did] not include findings that [Fernandez could not] perform frequent postural activities." AR 33.

Thus, the ALJ concluded that Fernandez had an RFC of medium without Dr. Fuchs's postural limitation of occasional crouching, kneeling, and stooping. AR 28. The ALJ then proceeded to step four.

### iii. Step Four

At step four, an ALJ determines whether the claimant can perform past relevant work. 20 C.F.R. 20 § 416.945(a)(4)(iv). An ALJ applies the RFC and must determine if the claimant can perform past relevant work as actually performed or, alternatively, as generally performed in the national economy. C.F.R. 20 § 416.920(f), 416.960(b).

The ALJ determined whether Fernandez could perform past relevant work of a strawberry picker based on the testimony of the VE. AR 33. The ALJ accepted the VE's confirmation that a hypothetical worker with an RFC equivalent to Fernandez's could perform the work of a strawberry picker. AR 62. The ALJ disregarded the questions by Fernandez's attorney about generally expected hours for harvesters exceeding the eight hours envisioned by the DOT. AR 64–65.

Thus, the ALJ concluded that Fernandez could perform past relevant work as generally performed in the national economy and was therefore not disabled. AR 33.

After his request for review was denied by the social security appeals counsel, Fernandez filed this complaint seeking this Court's review of the ALJ's decision. AR 1–9; *see* 42 U.S.C. § 405(h).

## II. LEGAL STANDARD

Summary judgment is proper when there is no genuine dispute of material fact and

Case No. 17-cv-03552-NC  8

the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g).

The decision of the Commissioner should only be disturbed if it is not supported by substantial evidence or based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

## III. DISCUSSION

Fernandez alleges: (1) the ALJ's finding that Fernandez had the residual functional capacity (RFC) to perform medium work without postural limitation is not supported by substantial evidence; and (2) the ALJ's finding that Fernandez could perform past relevant work as generally performed is not supported by substantial evidence. Dkt. No. 20 at 4, 7. The Court finds the ALJ committed legal error in determining Fernandez's RFC, and that substantial evidence does not support the ALJ's RFC determination. The Court also finds that the ALJ committed legal error in finding Fernandez could perform past relevant work, and that substantial evidence does not support her finding. Finally, the Court remands with instructions to calculate and award damages.

### A. The ALJ Committed Legal Error and Lacked Substantial Evidence in Determining Fernandez's RFC.

Fernandez alleges the ALJ improperly determined Fernandez's RFC because she improperly weighed the opinion evidence. Dkt. No. 20 at 4. Although Fernandez does not raise the issue, the Court also examines the ALJ's weighing of Fernandez's symptom testimony because it is critical to the decision here. The Court finds that the ALJ

Case No. 17-cv-03552-NC    9

committed legal error and lacked substantial evidence in weighing both the medical opinions and Fernandez's symptom testimony.

### 1. The ALJ Committed Legal Error and Lacked Substantial Evidence in Weighing the Medical Opinion Evidence.

Fernandez makes two arguments that the ALJ erred in weighing the medical evidence. First, Fernandez alleges that the ALJ had an affirmative obligation to develop the record further in resolving conflicting non-examining opinions. Dkt. No. 20 at 7. Second, Fernandez alleges that the ALJ improperly weighed Dr. Fuchs's testimony. Dkt. No. 20 at 6. The Court finds that the ALJ did not have an obligation to develop the record further. However, the Court agrees that the ALJ improperly weighed Dr. Fuchs's testimony.

#### i. The ALJ Did Not Err in Failing to Develop the Record Further.

For his proposition that the ALJ was obligated to further develop the record, Fernandez cites: *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001); and *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Neither case presents binding or persuasive precedent to the case at issue. Here, unlike in *Tonapetyan*, Fernandez was represented by an attorney. And here, unlike *Brown*, the ALJ investigated via a hearing, not merely through written interrogatories. Indeed, the ALJ provided the opportunity for Fernandez's attorney to examine experts, asked questions herself, and resolved conflicts as they arose. Therefore, the Court finds the ALJ did not shirk her responsibility to thoroughly develop the record.

#### ii. The ALJ Erred in Giving Little Weight to Dr. Fuchs's Opinion.

Fernandez next argues that the ALJ improperly weighed Dr. Fuchs's opinion. Ninth Circuit precedent distinguishes three types of physician opinions: (1) those written by physicians who treat the claimant (treating physicians); (2) those written by physicians who only examine the claimant (examining physicians); and (3) those written by

Case No. 17-cv-03552-NC            10

physicians who neither treat nor examine the claimant (non-examining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). Where medical opinions contradict, it is "solely the province of the ALJ to resolve the conflict." *Andrews*, 53 F.3d at 1041 (citing *Magallanes* 881 F.2d at 751); *see also Chaudry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). An ALJ may reject a treating, examining, or non-examining physician's opinion contradicted by another physician's opinion only if an ALJ cites "specific and legitimate" reasons supported by substantial evidence in the record for rejection. *Andrews*, 53 F.3d at 1041; *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Lester*, 81 F.3d at 830-31 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Here, the Court finds that the ALJ failed to provide specific and legitimate reasons for favoring the non-examining state medical consultants' opinion over non-examining physician Dr. Fuchs's opinion. The ALJ failed to meet the "specific and legitimate" standard when she substituted her lay-medical opinion for a physician's—asserting only that the record "did not contain findings" to justify Dr. Fuchs's opinion. AR 33; *see Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (explaining that hearing examiner inappropriately based rejection of testimony on description of symptoms in medical textbook outside of the record.) Furthermore, her reason fails because it is nothing more than boilerplate and provides no substantive basis for the conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1013–15 (9th Cir. 2014) (finding ALJ erred in pointing to the medical record as a whole, rather than detailing contradictions and inconsistencies with rejected testimony). Therefore, the ALJ committed legal error in weighing the medical opinion evidence.

Furthermore, the Court finds that the ALJ's claim is not supported by substantial evidence because the medical record actually does contain findings that support Dr.

Case No. 17-cv-03552-NC                 11

Fuchs's opinion. For example: Dr. Suh and Dr. Miller both independently diagnosed Fernandez with painful osteoarthritis. Also, all physicians' treatment notes contain fairly consistent symptom testimony from Fernandez as to his joint pain. AR 32; Dkt. No. 20 at 6–9; AR 53; *see Garrison*, 759 F. 3d at 1014 (explaining that the ALJ erred in failing to address treatment notes and accounts of consistent patient pain testimony that conflicted with RFC determination). Thus, substantial evidence in the record does not support the ALJ's claim that the record "did not contain findings indicating that Fernandez cannot perform frequent postural activities." AR 33. Therefore, the ALJ's justification fails legally—lacking specificity and legitimacy—as well as substantively—lacking substantial evidence.

### 2. The ALJ Committed Legal Error and Lacked Substantial Evidence in Rejecting Fernandez's Symptom Testimony.

When evaluating claimant's testimony of subjective pain, an ALJ engages in a two-step analysis.[3] *Garrison*, 759 F.3d at 1014–15. First, the ALJ evaluates whether objective medical evidence "could reasonably be expected to produce the pain" alleged. *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)). The claimant is not required to show that his impairment is expected to cause the severity of pain claimed; he only needs to show that the impairment could cause some degree of pain. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Second, if the claimant satisfies step one and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1281. "This is not an easy requirement to meet: the clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d 1014–15 (quoting *Moore v. Comm'r of Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir. 2002) (internal quotation marks omitted)).

---

[3] This two-step process is contained in the RFC determination which occurs before step four of the disability determination.

Case No. 17-cv-03552-NC  12

At step one, the ALJ found that the "medically determinable impairments could reasonably be expected to cause" Fernandez's alleged symptoms. AR 29. The ALJ made no finding of "malingering." AR 25–34. On both of those points, the Court agrees. Thus, the ALJ was obligated to proceed to step two and provide "clear and convincing reasons" for rejecting Fernandez's testimony. *Garrison*, 759 F.3d at 1014-15.

At step two, the ALJ improperly disregarded Fernandez's symptom testimony by merely referencing the objective medical evidence instead of providing clear and convincing reasons for finding Fernandez not credible. AR 28-31. "While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence." *Robbins v. SSA*, 466 F.3d 880, 883 (9th Cir. 2006). Moreover, finding that the medical evidence could support Fernandez's symptoms at step one and then pointing to the medical record at step two as lacking support was illogical, and clear legal error. *See id.* (explaining that ALJ's assertion that testimony is inconsistent with the medical record as a whole "is exactly the type [of justification] we have previously recognized the regulations prohibit"). Therefore, the ALJ erred in evaluating Fernandez's RFC because she dismissed his symptom testimony without properly evaluating his credibility at step two.

Furthermore, even if objective medical evidence alone were legally sufficient to discredit subjective testimony at step two, the ALJ's recital of the medical record lacked "clear and convincing" reasons for disregarding Fernandez's symptom testimony. The ALJ recounted both the symptom testimony and medical evidence thoroughly, but failed to clarify her rationale for finding the severity of the symptoms unsupported by the record. Specifically, the ALJ failed to articulate why Fernandez should be able to "frequently" perform postural activities despite Fernandez's claim that he couldn't kneel at all.

At best, the ALJ's review of the medical record provided a mixed bag of evidence. For instance, the ALJ recited Dr. Carlson's notes of "no apparent distress" and "normal gait," but then, in the same paragraph, she noted that MRI results revealed a "complex tear

Case No. 17-cv-03552-NC     13

of the posterior horn of the medial meniscus." AR 29. Also, the ALJ recited Dr. Heywood's (Fernandez's surgeon) notes that one month after knee surgery in April 2013, Fernandez was "doing quite well"; then she noted that Dr. Heyward found atrophy in left quadriceps and recommended Fernandez be off-work for "two-more months" in June 2013. AR 29-31. Finally, the ALJ recited Dr. Katzenberg's notes of "no difficulty walking on his heels or toes, tandem walking, or hopping on either foot"; however, the Court notes that these are not activities that Fernandez claimed to be disabled from doing, nor are they clearly dispositive of kneeling, crouching, and stooping. AR 28, 30. Also, the ALJ later noted that Dr. Katzenberg found "trigger points" and that Fernandez was "subjectively impaired by pain at all times." AR 32. The ALJ recited the medical record thoroughly, but the record itself did not clearly or convincingly undermine Fernandez's symptom testimony on its face and the ALJ provided insufficient reasons for how the medical record informed her finding.

Finally, the Court notes that none of the typical and legally proper bases for discrediting a claimant existed here. First, Fernandez complained of disabling knee pain consistently. Second, he sought treatment from several physicians, none of which noted any suspicions that Fernandez was "malingering." Third, his financial situation made it difficult for him to seek consistent treatment and, despite this, he sought treatment numerous times.

Therefore, the ALJ erred in determining Fernandez's RFC because she failed to provide legally sufficient reasons supported by substantial evidence for discrediting medical and symptom testimony.

### B. The ALJ Committed Reversible Harmful Legal Error when She Concluded that Fernandez Was Not Disabled at Step Four.

Fernandez's second major argument is that the ALJ erred in finding Fernandez not disabled at step four. First, Fernandez alleges that the ALJ failed to meet her obligation to resolve a conflict between the VE testimony and the DOT definition about work hours.

Case No. 17-cv-03552-NC 14

1    Dkt. No. 20 at 9. Second, Fernandez alleges that the improper RFC determination resulted
2    in harmful error at the ALJ's step four determination of non-disability. Dkt. No. 20 at 7.
3    The Court finds that no conflict existed between the VE and DOT and thus it was not legal
4    error for the ALJ to not resolve. However, Fernandez is correct that the RFC
5    determination was improper and critical in determining Fernandez was not disabled.
6    Therefore, the ALJ committed harmful legal error at step four.

### 1. The ALJ Did Not Err in Failing to Resolve a Conflict Between the DOT and VE Because No Such Conflict Existed.

The first issue Fernandez raises is whether the ALJ needed to resolve a conflict between the VE and the DOT definition at step four. At step four, an ALJ determines if the claimant can perform past relevant work. *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001). An ALJ relies primarily on the Dictionary of Occupational Titles (DOT) in making this determination. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). An ALJ may also hear the testimony of a vocational expert (VE) to determine ability to perform past relevant work. *Id.* An ALJ has an affirmative obligation to (1) determine if a conflict between the VE and the DOT exists; and then (2) to resolve it. *Id.*

During the testimony of the VE, the ALJ met her first obligation by confirming that the VE would advise her if there was a "need to deviate" from the DOT regarding Fernandez's past relevant work. AR 61. Then, when the VE did in fact state a conflict— that work as a strawberry picker is more like the DOT definition of "vegetable harvester" than "fruit harvester"— the ALJ met her second obligation by obtaining an explanation and allowing the VE to proceed with a hypothetical based on "vegetable harvester." AR 61.

Fernandez alleges that the VE had a further conflict with the DOT as to work hours. However, there was no conflict because when Fernandez's attorney suggested that actual work hours for a strawberry picker were closer to 10 hours, the VE only said that the hours "likely" were greater than eight, but "could not say for certain." AR 65. Thus, if any

conflict existed, it was between Fernandez's attorney and the VE, not between the VE and the DOT. The ALJ is only obligated to determine if a conflict exists between the VE and the DOT. *Massachi*, 486 F.3d at 1153. Therefore, the ALJ did not err in not inquiring more about work hours because the VE did not confirm the conflict.

### 2. The ALJ Applied an Improperly Determined RFC that Was Critical to Concluding Fernandez Could Perform Past Relevant Work

Fernandez next asserts that the improper RFC led to an improper step four outcome. An ALJ uses the RFC to determine if the claimant can do past relevant work. *Garrison*, 759 F.3d at 1011. The claimant is not disabled if he can perform actual past work or relevant work as performed generally in the national economy. *Pinto*, 249 F.3d at 845.

As discussed above, the ALJ committed legal error and lacked substantial evidence in determining Fernandez's RFC: medium work with "frequent" kneeling, crouching, and stooping. The ALJ relied on the VE testimony that a worker with "frequent" postural limitations would still be able to perform the work of a strawberry picker and determined that Fernandez was not disabled. AR 33, 62. Furthermore, when Fernandez's attorney asked the VE to use the postural limitations determined by Dr. Fuchs ("occasional" postural limitations) the VE concluded that Fernandez would be excluded from the work of a strawberry picker. AR 63. Thus, the conflict between a RFC with "occasional" rather than "frequent" was critical to the determination of non-disability. Therefore, the ALJ committed harmful legal error at step four.

### C. The Case is Properly Remanded with Instructions to Calculate and Award Benefits.

Having concluded that the ALJ erred in the RFC determination and step four finding of no disability, the Court turns next to the proper remedy. The Court finds that Ninth Circuit precedent supports remanding with instructions to calculate benefits because (1) the requirements of the "credit-as-true" rule are met and (2) no "serious doubt" exists as to Fernandez's disability.

Case No. 17-cv-03552-NC    16

**1. The Three Requirements of the Credit as True Rule Are Met.**

If additional proceedings can remedy an error by the ALJ, a social security case should be remanded. *Lewin v. Schweiker*, F.2d 631, 635 (9th Cir. 1981). However, courts are empowered to affirm, modify, or reverse a decision by the Commissioner "with or without remanding" for a rehearing. 42 U.S.C. § 405(g). In appropriate circumstances, courts are "free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits." *Garrison*, 759 F.3d at 1014–15 (collecting cases). A case is properly remanded with instructions when no issues are left to be resolved before a proper disability determination can be made and it is clear that a finding of disability would be required if improperly weighed testimony was credited. *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1415–16 (9th Cir. 1988).

*Varney* has been applied as the "credit-as-true" rule, having three requirements: (1) the record has been fully developed so that further proceedings would be useless; (2) the ALJ has failed to provide legally sufficient reasons for rejecting claimant testimony or medical opinion; and (3) if the improperly discredited evidence were accepted as true, the ALJ would be required to find the claimant disabled. *Garrison*, 759 F.3d at 1014–15; *see also Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1202 (9th Cir. 2008); *Lingenfelter*, 504 F.3d at 1041; *Orn*, 495 F.3d at 640; *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *Smolen*, 80 F.3d at 1292.

Here, on the first requirement, the Court finds that the record is sufficiently developed such that additional proceedings would be useless. Fernandez's medical history is longitudinal and the ALJ had the opportunity to question both Fernandez and Dr. Fuchs at the hearing. AR 29, 43–56. Allowing the ALJ to decide the issue again would create an unfair "heads we win; tails, let's play again" system of disability benefits adjudication. *Benecke*, 379 F. 3d at 595 (remanding with instructions and explaining that further proceedings can delay much needed income for claimants who are unable to work).

Second, as discussed above, the ALJ failed to provide legally sufficient reasons for

Case No. 17-cv-03552-NC  17

rejecting Fernandez's symptom testimony and Dr. Fuchs's medical opinion.

Third, the Court finds that if Fernandez's testimony or Dr. Fuchs's opinion were credited as true, then the finding of disability would be compulsory. Fernandez testified that he cannot kneel because of his knee pain. AR 54. Thus, credited as true, Fernandez would be unable to even "occasionally" kneel, much less "frequently" kneel—as required by his past relevant work. Therefore, Fernandez would be disabled per the testimony of the VE. AR 63. Similarly, if Dr. Fuchs's opinion were credited as true, then Fernandez would be able to only "occasionally" perform postural activities. Therefore, again, Fernandez would be disabled per the testimony of the VE. AR 63.

Thus, all three requirements of the "credit-as-true" rule are met.

### 2. The Court Finds No "Serious Doubt" Exists Regarding Whether Fernandez Was Disabled.

The "credit-as-true" rule is not mandatory in all cases; even when all requirements are met, the Court has "flexibility" to remand for further proceedings. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003). Specifically, when the record as a whole creates "serious doubt" that a claimant is disabled, the Court may remand for further proceedings despite the "credit-as-true" rule. *Garrison*, 759 F.3d at 1021.

The Court finds no "serious doubt" regarding Fernandez's disability because the ALJ's disability determination is supported only by the non-examining, state consultants' medical opinion, which conflicts with the other improperly rejected physician's opinions and the symptom testimony of Fernandez himself.

In addition to Dr. Fuchs and Fernandez's improperly disregarded testimony, the medical record as a whole is rife with support for a finding of disability. Dr. Heyward—a treating physician whose opinion is presumptively due great weight, and the only person in the medical record who took a look inside Fernandez's knee—noted that Fernandez should be off work. AR 251. Dr. Romo also noted that Fernandez should not work till the end of December 2013. AR 259. Finally, Dr. Miller and Dr. Suh both diagnosed Fernandez with

Case No. 17-cv-03552-NC    18

osteoarthritis. AR 303, 310.

This case turns on one particular issue: can Fernandez "frequently" or only "occasionally" kneel? Fernandez testifies that his pain prevents him from kneeling at all. No treating or examining physician cast any doubt on Fernandez's sincerity. The Court recognizes that the medical record contained a mixed bag of objective findings that, when taken in isolation, raises some doubt about Fernandez's disability. However, the Court finds that, when considered alongside the medical opinions and consistent symptom testimony, the record does not cast "serious doubt" about Fernandez's disability. The Court sees no benefit in remanding for further proceedings and is wary of the potential injustice of delaying benefits further. Accordingly, the case is properly remanded with instructions to calculate and award benefits.

## IV. CONCLUSION

For the reasons stated above, the Court finds the ALJ committed legal error and lacked substantial evidence to find Fernandez not disabled. Thus, the Court DENIES Berryhill's cross motion for summary judgment and GRANTS Fernandez's motion for summary judgment. The Court REVERSES the decision of the ALJ and REMANDS for calculation of benefits.

**IT IS SO ORDERED.**

Dated: June 12, 2018 _____
NATHANAEL M. COUSINS
United States Magistrate Judge

Case No. 17-cv-03552-NC         19